# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                Case No. 06-Cr-226

EMILIO JARA BARRERA,
MARTIN CARDENAS,
ALCARIO RENEE CRUZ and
JOSE RAMON ZAVALA-URBINA,

    Defendants.

## MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE RUDOLPH T. RANDA

## NATURE OF CASE

On September 26, 2006, defendants Emilio Jara Barrera, Martin Cardenas, Alcarjo Renee Cruz and Jose Ramon Zavala-Urbina were charged in a two-count indictment with violating the federal controlled substances laws. In Count One, the defendants are charged with conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i) and 846 and 18 U.S.C. § 2. Count Two charges them with the possession, with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i) and 18 U.S.C. § 2.

Pursuant to the pretrial scheduling order issued at the arraignment and plea, defendant Cardenas filed several motions, including a motion to suppress statements (Docket #16) which will be addressed herein.

## MOTION TO SUPPRESS STATEMENTS

Defendant Martin Cardenas (hereinafter the defendant) moves this court, pursuant to Rule 12 of the Federal Rules of Criminal Procedure and the Fourth, Fifth and Sixth Amendments to the United States Constitution for an order suppressing as evidence any statements allegedly made by him to law enforcement officers on September 13, 2006, at approximately 8:10 p.m.

On November 1, 2006, the court conducted an evidentiary hearing on the defendant's motion. Jesus Sandoval, a special agent with the Drug Enforcement Administration (DEA), testified at the hearing. Based on the evidence presented at the hearing, the court makes the following findings of fact.

## Findings of Fact

On September 13, 2006, at approximately 12:00 noon, DEA Special Agent Jesus Sandoval, who was operating in an undercover capacity, contacted Jose Ramon Zavala-Urbina to arrange the purchase of two kilos of heroin. Agent Sandoval and defendant Zavala made several telephone calls back and forth. Ultimately Agent Sandoval and defendant Zavala agreed that defendant Zavala would provide the agent with two kilos of heroin. The transaction was to occur on the south side of Milwaukee at approximately 8:00 p.m.

At approximately 7:30 p.m. on September 13, 2006, Agent Sandoval went to the Pick 'N Save on 18th Street and National Avenue in the City of Milwaukee. Upon his arrival at that location, he placed a telephone call to defendant Zavala and they agreed to meet at the Pick 'N Save grocery store. To assist defendant Zavala in finding him in the parking lot, Agent Sandoval provided defendant Zavala with a description of the vehicle near him. Subsequently

a green Ford Explorer arrived at Agent Sandoval's location. Agent Sandoval entered the vehicle and sat down behind the driver, who was subsequently identified as defendant Cardenas. The passenger seated in the right front passenger seat was defendant Zavala. Agent Sandoval spoke to both individuals in the vehicle. At that time the back door to the vehicle was open and the light inside the vehicle was on. Defendant Cardenas told Agent Sandoval to close the door so that the light in the vehicle would go off.

While Special Agent Sandoval was in the vehicle with the defendants, he stated that the substance involved was heroin. Agent Sandoval asked about the purity of the heroin which he was to purchase for $82,000.00. He also said he wanted to test the heroin and inquired about its location. After a number of inquiries, defendant Zavala told Special Agent Sandoval that the heroin was in a trap compartment in the back part of the vehicle and he told the agent to reach under the back seat. At the same time that defendant Zavala was making the statement to Agent Sandoval, defendant Cardenas was pointing to the area where the heroin was located.

Special Agent Sandoval retrieved the package under the seat and then asked the defendants how and where they wanted to count the money since it was in small bills and would take about 20 minutes to count. Agent Sandoval then exited the vehicle to get the money. After exiting the vehicle, Agent Sandoval gave the arrest signal and at approximately 7:52 p.m., law enforcement officers moved in with guns drawn and arrested both defendants. The officers were loudly identifying themselves at the time.

Defendant Cardenas was handcuffed, taken into custody and driven to a neutral area about one and one-half miles away from the Pick 'n Save store. The officer who transported defendant Cardenas was English speaking.

- 3 -

Case 2:06-cr-00226-RTR   Filed 11/07/06   Page 3 of 7   Document 30

Special Agent Sandoval arrived at the neutral location and spoke to defendant Cardenas who was inside the police vehicle. Agent Sandoval remained outside the vehicle. He told defendant Cardenas why he was arrested and what the charges were. He asked defendant Cardenas biographical information, such as his name, address, date of birth and whether or not he was a citizen of the United States. He did not ask any questions about the drug deal. The law enforcement officer standing next to Special Agent Sandoval wrote down the biographical information which the defendant provided. The defendant did not have identification on him when he was arrested.

Before he was questioned, defendant Cardenas told Agent Sandoval that defendant Zavala had contacted him because defendant Zavala needed a ride from Waukesha to Milwaukee. Defendant Zavala said that he was going to Milwaukee to do a drug deal. The defendant told Agent Sandoval that he did not know anything else. Agent Sandoval did not read the defendant his Miranda[1] warning before the defendant made his statement. No further questions were asked of the defendant. The discussion with the defendant took place at approximately 10:00 p.m.

According to Agent Sandoval, the defendant had indicated that he did not know English and he had advised someone that he only spoke Spanish. Agent Sandoval wanted information from the defendant to see if the defendant could assist him in his further investigation of the case.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

- 4 -

## ANALYSIS

In seeking to suppress his statement, the defendant asserts that his statement was not voluntarily made. He cites his youth, inexperience with the English language, lack of Miranda warnings and the circumstances surrounding his arrest by officers with weapons drawn to support his contention that his statement was not given voluntarily.

In opposing the motion, the government asserts that Special Agent Sandoval did not question the defendant about the events culminating in the defendant's arrest. He informed the defendant of the charges that caused his arrest and obtained some biographical information from the defendant, in part, because the defendant was carrying no identification at the time of his arrest. The government points out that after the defendant spontaneously stated that defendant Zavala asked him for a ride to a drug deal, Special Agent Sandoval asked the defendant no questions. The government maintains that there is no evidence that the defendant's age, educational background or mental state impaired his ability to spontaneously provide voluntary statement to Agent Sandoval.

It is well-settled that Miranda deals only with the "admissibility of statements obtained from an individual who is subjected to custodial police interrogation." United States ex rel. Link v. Lane, 811 F.2d 1166, 1170 (7th Cir. 1987) (citing Miranda v. Arizona, 384 U.S. 436, 439 [1966]). Here, there is no dispute that the defendant was in custody when he made the statement to Agent Sandoval.

Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. Interrogation includes express questioning, as well as "any words or actions on the part of the police (other than those attendant to arrest and

- 5 -

custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

Questions posed to obtain biographical information from a defendant are outside the scope of Miranda. Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990); United States v. Leung, 929 F.2d 1204, 1209 (7th Cir. 1991). Such information falls within the "routine booking question" exception which is exempt from Miranda coverage. Muniz, 496 U.S. at 601.

Volunteered statements are not within the scope of Miranda, insofar as the rights are designed to protect individuals from the coercive tactics of police interrogation. Rhode Island v. Innis, 446 U.S. 291 (1980). Since Miranda and its progeny are designed to protect criminal defendants from coercive police tactics which would produce involuntary confessions, they afford no protections to criminal defendants who, of their own volition, decide to make statements and otherwise cooperate with authorities.

In this case, the evidence shows that defendant Cardenas volunteered that defendant Zavala had asked for a ride to a drug transaction. Other than routine biographical information to establish the identity of the defendant, Special Agent Sandoval asked the defendant no questions. Approximately 20 minutes after his arrest and while he was at a neutral location, the defendant spontaneously offered the information about defendant Zavala.

Additionally, there is also no evidence that the statement which the defendant seeks to suppress was involuntarily or coerced in any way. A statement is voluntary if, under the totality of the circumstances, it is a "product of a rational intellect and free will and not the result of physical abuse or psychological intimidation or deceptive interrogation tactics that have overcome the defendant's free will." United States v. Huerta, 239 F.3d 865, 871 (7th Cir. 2001) (quoting United States v. Dillon, 150 F.3d 754, 757 [7th Cir. 1998]); see also, Schneckloth v.

Bustamonte, 412 U.S. 218, 226 (1973). Here, the defendant volunteered the information to Special Agent Sandoval. He was not questioned about the drug transaction by Special Agent Sandoval.

Based on the evidence presented, there is no basis for suppressing defendant Cardenas' spontaneous and voluntary statement to Special Agent Sandoval. Accordingly, the defendant's motion to suppress statements (Docket #16) will be denied.

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States district judge enter an order **denying** defendant Martin Cardenas' motion to suppress statements. (Docket #16).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 7th day of November, 2006.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge